THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION


GARY PADGETT,                          :

      Plaintiff,                    :

vs.                                    :    CIVIL ACTION 04-00784-WS-C

WILLIAM WHEAT, et al.,                 :

      Defendants.                   :


<u>REPORT AND RECOMMENDATION</u>

     This is an action under 42 U.S.C. § 1983 by an Alabama prison inmate, proceeding *pro se* and *in forma pauperis*, which has been referred for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4).  Plaintiff claims that he was denied appropriate medical care, denied a proper diet, denied protection from other inmates, and denied access to sufficient handicapped accessible toilets and showers, while incarcerated as a pretrial detainee in the Washington County Jail from October 2002, through March 2003.  (Doc. 1 at 3-6, 8-12, Complaint).  Specifically, Plaintiff alleges that Defendant Sheriff William Wheat, Defendant Washington County Commissioners Johnny Johnson, Alan Bailey, William Beasley, Hilton Robbins, and Willie Dixon, and Defendant Jailer Doris Weaver violated Plaintiff's Eighth Amendment right against cruel and unusual punishment, as well as Plaintiff's Fourteenth Amendment Equal Protection

right.[1] As relief, Plaintiff is requesting that this Court issue a declaratory judgment stating that Defendants have violated Plaintiff's Eighth and Fourteenth Amendment rights; issue an injunction ordering Defendants to not retaliate against Plaintiff and his family; and award compensatory and punitive damages against all Defendants.  (Doc. 1 at 6-7, 12-14).

Defendants Wheat, Johnson, Bailey, Beasley, Robbins,  Dixon, and Weaver filed an Answer (Doc. 11, Answer), and a Special Report (Doc. 12, Special Report) on September, 16, 2005, denying that they violated Plaintiff's constitutional rights and contending that Plaintiff has failed to state a claim. Additionally, Defendants have asserted the affirmative defenses of qualified immunity and absolute immunity.  (Docs. 11 and 12).  Defendants also contend that Plaintiff's claims are barred due to his failure to exhaust all available state remedies, and that Plaintiff's claims against the Commissioners are barred due to Plaintiff's failure to present a claim to the County as required, according to Defendants, by Alabama Code § 6-5-20.  (Doc. 11 at 2).  On April 17, 2007, this Court entered an Order converting Defendants' Special Report and Answer to a Motion for Summary Judgment.  (Doc. 22, Order).

Plaintiff filed a Response to Defendants' Answer and Special Report on May 16, 2007, reiterating his original claims.  (Doc. 23, Response).  In his Response, Plaintiff also

---

[1]In his Complaint, Plaintiff also initially made claims against Defendants Jimmy Moss and Daisy Sleets.  (Doc. 1).  However, this Court dismissed those claims without prejudice on December 27, 2006.  (Doc. 17, Report and Recommendation, Doc. 20, Order, and Doc. 21, Judgment).

requested an extension of time in which to file an additional response to Defendants' Answer and Special Report. The Court granted this request, allowing Plaintiff until June 18, 2007, in which to file any additional pleadings. (Doc. 24, Order). On June 22, 2007, Plaintiff filed a Response to Motion for Summary Judgment, again reiterating his original claims in this action. (Doc. 25, Response). In accordance with the Court's Order, and allowing for the extension of time granted Plaintiff, Defendants' Motion for Summary Judgment was taken under submission on June 22, 2007. After consideration by the Court, it is recommended that Defendants' Motion for Summary Judgment be granted, that this action be dismissed with prejudice, and that judgment be entered in favor of Defendants Sheriff William Wheat, Washington County Commissioners Johnny Johnson, Alan Bailey, William Beasley, Hilton Robbins, Willie Dixon, and Jailer Doris Weaver, and against Plaintiff Gary Padgett on all claims.

## I. FACTS

1.      During the time period from October 2002, until March 2003, while Plaintiff was  incarcerated at the Washington County Jail ("WCJ"), he claims that he was denied appropriate care by Defendants. Specifically, Plaintiff claims that as a diabetic with heart problems, he was denied an appropriate diet, denied appropriate medical attention, and denied sufficient protection from other inmates. (Doc. 1 at 4-5, 8-12). Plaintiff also complains that the WCJ had an insufficient number of showers and toilets for the number of inmates in the jail, and that WCJ did not have proper handicapped accessible facilities which he needed because he was confined to a wheelchair. (Id.).

Plaintiff complains that the Washington County Commissioners failed to provide enough funds to adequately run the WCJ, and complains that Sheriff Wheat and Jailer Weaver failed to ensure that Plaintiff was adequately accommodated, cared for, and protected at the WCJ. Plaintiff also claims that Defendant Weaver failed to report Plaintiff's difficulty living in his assigned area of the WCJ. (<u>Id.</u> at 10).

2. According to Defendants, inmates at the WCJ may receive routine medical attention by simply filling out a medical request form, with the exception that emergency requests for medical attention may be made orally. (Doc. 12 at 3). A jailer may contact emergency medical personnel if a jailer believes that an inmate is in obvious distress. (<u>Id.</u>). Defendants note that Plaintiff never filed a medical request form during his incarceration at the WCJ. (<u>Id.</u>). Moreover, Defendants contend that the WCJ has a policy of providing adequate food, housing, bathing and toilet facilities for its residents, including providing three nutritious meals per day. (Doc. 12 at 4). According to Defendants, the WCJ tries to comply with special dietary needs prescribed by a health care provider, but Defendants contend that Plaintiff never requested any special dietary considerations, nor did he provide any such instructions from a health care provider. (<u>Id.</u>).

3. Defendants assert that they did in fact properly administer Plaintiff the medication which was prescribed for him, despite Plaintiff's very vague allegations that his medication was improperly stored and "dispensed by untrained medical personnel." (Doc. 1 at 4). Regarding Plaintiff's personal safety, Defendants further contend that they

were never notified by Plaintiff of an actual or threatened assault by another inmate.

Defendants claim that they were not, therefore, aware of a risk of harm to Plaintiff.

Finally, Defendants state that the WCJ inmates have continual access to water and toilet

facilities. (Doc. 12 at 4).

4.      As a result of Plaintiff's claim that he has been denied medical care, denied

appropriate toilet and shower facilities, and denied adequate protection from other

inmates, Plaintiff is requesting that the Court issue a declaratory judgment stating that

Plaintiff's Eighth and Fourteenth Amendments have been violated, issue an injunction

ordering Defendants to not retaliate against Plaintiff and his family, and award

compensatory and punitive damages. (Doc. 1 at 13-14).

## SUMMARY JUDGMENT STANDARD

1.      In analyzing the propriety of a motion for summary judgment, the Court

begins with these basic principles. The Federal Rules of Civil Procedure grant this Court

authority under Rule 56 to render "judgment as a matter of law" to a party who moves for

summary judgment. "[S]ummary judgment is proper 'if the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if any,

show that there is no genuine issue as to any material fact. . . .'" Celotex Corp. v. Catrett,

477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). The Court must view the

evidence produced by "the nonmoving party, and all factual inferences arising from it, in

the light most favorable to" that party. Barfield v. Brierton, 883 F.2d 923, 934 (11th Cir.

1989).

2.      However, Rule 56(e) states that:

> an adverse party [to a motion for summary judgment] may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e); see also Celotex Corp., 477 U.S. at 325-27. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986) (internal citations omitted). "Summary judgment may be granted against a party who fails to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial." Liberty Mut. Fire Ins. Co. v. Sahawneh, 2001 WL 530424, *1 (S.D. Ala. May 11, 2001) (citing Anderson, 477 U.S. at 249-50).

## III. DISCUSSION

1.      In this action, Plaintiff seeks redress for constitutional deprivations pursuant to 42 U.S.C. § 1983. Specifically, Plaintiff alleges that his Eighth and Fourteenth Amendment constitutional rights were violated by Defendant Sheriff Wheat's and Defendant Jailer Weaver's failure to adequately meet his medical needs and failure to protect him while incarcerated at the WCJ, *i.e.*, the denial of appropriate medical care for his alleged diabetes and heart problems, the denial of an appropriate medical diet for his

alleged diabetes, the denial of trained medical personnel to dispense and properly store

his medications, the failure to protect him from other inmates and to provide handicapped

accessible toilets and showers from approximately October 2002, through March 2003.

Plaintiff also claims that Defendants Washington County Commissioners Johnny

Johnson, Alan Bailey, William Beasley, Hilton Robbins, and Willie Dixon failed to

ensure that the WCJ was properly funded during his stay.[2]  For the reasons set forth

---

[2]It is unclear whether Plaintiff is suing Defendants, Sheriff Wheat, Jailer Weaver, and Washington County Commissioners Johnson, Bailey, Beasley, Robbins, and Dixon, in their official or individual capacities, or both.  Initially, as to the Washington County Commissioners, they are entitled to absolute legislative immunity under § 1983 for claims arising from the appropriation of funds for the maintenance of a county jail.  Woods v. Gamel, 132 F.3d 1417, 1420 (11th Cir. 1998) ("The budgetary decisions made by defendants for funding the county-including the jail-are legislative acts protected by legislative immunity.").  Moreover, "[c]ounty commissioners cannot be held liable for actions undertaken during the daily operation of a county jail."  Henderson v. Wright, 2007 WL 1725370, *1 (M.D. Ala. 2007), citing Turquitt v. Jefferson County, Alabama, 137 F.3d 1285, 1289 (11th Cir. 1998).  Thus, each of the Defendant County Commissioners is absolutely immune from suit for damages in his individual capacity.  However, the County Commissioners are not state officials, so it would appear that they may not be entitled to immunity in their official capacities.  This issue is moot, however, as Plaintiff has failed to demonstrate a constitutional violation.

As to Sheriff Wheat and Jailer Weaver, each of these Defendants is a state official; thus, each Defendant is absolutely immune from suit for damages in his or her official capacity.  See Harbert Int'l, Inc. v. James, 157 F.3d 1271, 1277 (11th Cir. 1998) (state officials sued in their official capacities are protected from suit for damages under the Eleventh Amendment).  Moreover, "[q]ualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Dalrymple v. Reno, 334 F.3d 991, 994 (11th Cir. 2003) (quoting Hope v. Pelzer, 536 U.S. 730, 739 (2002)).  In determining whether qualified immunity is appropriate in a given case, "[t]he court must first ask the threshold question whether the facts alleged, taken in the light most favorable to the plaintiffs, show that the government official's conduct violated a constitutional right."  Dalrymple, 334 F.3d at 995 (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)).  Having found herein that

below, the Court finds that Plaintiff's allegations fail to establish any constitutional violation by Defendants.  Thus, it is recommended that Defendants' Motion for Summary Judgment be granted.

2.      As discussed above, in this action, Plaintiff alleges that Defendants failed to appropriately provide for his medical needs, failed to protect him from other inmate attacks, and failed to provide appropriate accessible toilets and showers in violation of the Eighth Amendment and Fourteenth Amendment.  Specifically, Plaintiff alleges that between the months of October 2002, and March 2003, he was denied proper medical treatment for his alleged diabetes and heart condition while incarcerated in the WCJ. (Doc. 1).  Plaintiff also alleges that he was denied a proper diabetic diet, and that he was denied protection from other inmates.  Finally, Plaintiff contends that he was not provided use of a handicapped accessible toilet and shower.  (Doc. 1).

3.      Although Plaintiff has raised these claims under the Eighth and Fourteenth Amendments, the Eighth Amendment only protects individuals incarcerated subsequent to and because of a lawful conviction of a crime.  Hamm v. DeKalb County, 774 F.2d 1567, 1572 (11th Cir. 1985).   Plaintiff's claims in this action appear to have occurred prior to his conviction, and thus while he was considered a pretrial detainee.  Therefore, his conditions of confinement claims are governed by the Fourteenth Amendment Due Process Clause.  However, it has been held that "the minimum standard allowed by the

Plaintiff's allegations do not establish a constitutional violation, "there is no necessity for further inquiries concerning qualified immunity."  Saucier, 533 U.S. at 201.

due process clause is the same as that allowed by the eighth amendment for convicted persons." <u>Hamm</u>, 774 F.2d at 1574. Thus, the Court will use the Eighth Amendment standard in analyzing Plaintiff's claims.

4.      The Eighth Amendment provides that, "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. "The Eighth Amendment's proscription of cruel and unusual punishments prohibits prison officials from exhibiting deliberate indifference to prisoners' serious medical needs." <u>Campbell v. Sikes</u>, 169 F.3d 1353, 1363 (11th Cir. 1999) (citing <u>Estelle v. Gamble</u>, 429 U.S. 97, 104, 97 S. Ct. 285, 291, 50 L. Ed. 2d 251 (1976)). In <u>Sims v. Mashburn</u>, 25 F.3d 980 (11th Cir. 1994), the Court delineated the objective and subjective portions of an Eighth Amendment claim as follows:

> An Eighth Amendment claim is said to have two components, an objective component, which inquires whether the alleged wrongdoing was objectively harmful enough to establish a constitutional violation, and a subjective component, which inquires whether the officials acted with a sufficiently culpable state of mind.

<u>Sims</u>, 25 F.3d at 983 (citing <u>Hudson v. McMillian</u>, 503 U.S. 1, 8 (1992)).

Medical Care Claims

5.      To meet the objective element required to demonstrate a denial of medical care in violation of the Eighth Amendment, a plaintiff must first demonstrate the existence of an "objectively serious medical need." <u>Farrow v. West</u>, 320 F.3d 1235, 1243 (11th Cir. 2003). "Because society does not expect that prisoners will have unqualified

9

access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" Hill v. DeKalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1186 (11th Cir. 1994) (quoting Hudson v. McMillian, 503 U.S. 1, 9, 112 S. Ct. 995, 1000, 117 L. Ed. 2d 156 (1992)). "[A] 'serious' medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Id. at 1187 (quoting Laaman v. Helgemoe, 437 F. Supp. 269, 311 (D.N.H. 1977)). "In either of these situations, the medical need must be one that, if left unattended, pos[es] a substantial risk of serious harm." Farrow, 320 F.3d at 1243 (internal quotation marks and citation omitted).

6.      "Delay in access to medical attention can violate the Eighth Amendment...when it is tantamount to unnecessary and wanton infliction of pain." Hill, 40 F.3d at 1187 (internal citations and quotation marks omitted). "Cases stating a constitutional claim for immediate or emergency medical attention have concerned medical needs that are obvious even to a layperson because they involve life-threatening conditions or situations where it is apparent that delay would detrimentally exacerbate the medical problem." Id.

> The "seriousness" of an inmate's medical needs also may be decided by reference to the *effect* of delay in treatment. Gaudreault, 923 F.2d at 208; Monmouth County, 834 F.2d at 347. Where the delay results in an inmate's suffering "a life-long handicap or permanent loss, the medical need is considered serious." Id. An inmate who complains that delay in medical treatment rose to a constitutional violation must

place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed. Further, we have held that "[t]he tolerable length of delay in providing medical attention depends on the *nature* of the medical need and the *reason* for the delay." <u>Harris v. Coweta County</u>, 21 F.3d 388, 393-94 (11th Cir. 1994) (emphasis added). Consequently, delay in medical treatment must be interpreted in the context of the seriousness of the medical need, deciding whether the delay worsened the medical condition, and considering the reason for delay.

<u>Hill</u>, 40 F.3d at 1188-89 (emphasis in original) (footnotes omitted).

7.      Although Plaintiff claims that he was denied access to a doctor and that his medication was improperly stored and dispensed, he offers no details as to when and why he needed medical care, or as to how he believed his medication was improperly handled, other than to contend that, as a result, he suffered three heart attacks, and a worsening of his diabetes. (Doc. 1 and doc. 25 at 2, 4; Ex. A at 2). Plaintiff's pleadings indicate that he did, in fact, receive some medical care, although Plaintiff may have been displeased with the exact manner in which it was handled. (<u>Id.</u>). Defendants contend that Plaintiff never requested to see a physician, nor did he request a diabetic diet. Despite Plaintiff's allegations of having three heart attacks and a worsening of his diabetes during his stay at the WCJ, there is no medical evidence to support this. Because Plaintiff has failed to offer any verifying medical evidence to show that any alleged improper handling of his medication, or lack of a doctor, "pos[ed] a substantial risk of serious harm" to him, <u>Farrow</u>, 320 F.3d at 1243, or in any way had a detrimental effect on his medical condition, <u>Hill</u>, 40 F.3d at 1188, Plaintiff has failed to establish the objective element of

his constitutional claim.

8.     Further, in order to meet the required subjective element of an Eighth

Amendment denial of medical care claim, a plaintiff must demonstrate "deliberate

indifference" to a serious medical need.  Farrow, 320 F.3d at 1243.

> In Estelle, the Supreme Court established that "deliberate
> indifference" entails more than mere negligence.  Estelle, 429
> U.S. at 106, 97 S. Ct. 285; Farmer, 511 U.S. at 835, 114 S. Ct.
> 1970.  The Supreme Court clarified the "deliberate
> indifference" standard in Farmer by holding that a prison
> official cannot be found deliberately indifferent under the
> Eighth Amendment "unless the official *knows of* and
> *disregards an excessive risk to inmate health or safety;* the
> official must both be aware of facts from which the inference
> could be drawn that a substantial risk of serious harm exists,
> and he must also draw the inference."  Farmer, 511 U.S. at
> 837, 114 S. Ct. 1970 (emphasis added).  In interpreting
> Farmer and Estelle, this Court explained in McElligott that
> "deliberate indifference has three components: (1) subjective
> knowledge of a risk of serious harm; (2) disregard of that risk;
> (3) by conduct that is more than mere negligence."
> McElligott, 182 F.3d at 1255; Taylor, 221 F.3d at 1258
> (stating that defendant must have subjective awareness of an
> "objectively serious need" and that his response must
> constitute "an objectively insufficient response to that need").

Farrow, 320 F.3d at 1245-46 (emphasis in original).  In this action, Plaintiff must show

that Defendants engaged in "deliberately indifferent" delay or refusal in treating his

serious medical problems.  Cf. McElligott v. Foley, 182 F.3d 1248, 1256-57 (11th Cir.

1999) (reversing summary judgment for a prison physician and nurse who knowingly and

deliberately delayed medical treatment to an inmate who was suffering from severe

abdominal pain, extreme vomiting, and significant weight loss).

9.      Initially, and importantly, the Court notes that Plaintiff does not claim that Defendants were "deliberately indifferent" or even that they "intentionally" denied or delayed him proper medical care.  Moreover, Plaintiff offers no evidence that any alleged delay or refusal of medical care, if it occurred, was anything more than simple negligence.  Again, Plaintiff has failed to offer any medical evidence in support of his allegations of improper medical care, and, significantly, no medical evidence in support of any injury to himself.  Plaintiff has offered nothing more than his own opinion that he did not receive proper care while incarcerated at the WCJ.  Thus, Plaintiff has failed to sufficiently demonstrate a constitutional violation regarding his health care.

10.      As discussed above, in order to satisfy the subjective element of an Eighth Amendment claim, Plaintiff must show that Defendants knew of and disregarded "an excessive risk to [his] health or safety."  Farrow, 320 F.3d at 1245.   Stated differently, Plaintiff must show that Defendants had "subjective knowledge of a risk of serious harm," that Defendants disregarded that risk, and that Defendants did so "by conduct that is more than mere negligence."  Id.   The record here is devoid of evidence that Defendants had subjective knowledge of, and disregarded, a risk of serious harm to Plaintiff from his alleged heart and diabetic problems.  There is no evidence that Defendants were deliberately indifferent to any of Plaintiff's alleged medical conditions.

11.      The Eleventh Circuit has recognized that "when a prison inmate has received medical care, courts hesitate to find an Eighth Amendment violation."  Waldrop v. Evans, 871 F.2d 1030, 1035 (11th Cir. 1989).  The fact that a plaintiff may disagree

13

with the efficacy of the treatment recommended or simply prefer a different course of treatment does not state a valid claim of medical mistreatment under the Eighth Amendment. See, e.g., Adams v. Poag, 61 F.3d 1537, 1545 (11th Cir. 1995) ("the question of whether governmental actors should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment.") (quoting Estelle, 429 U.S. at 107); Del Muro v. Federal Bureau of Prisons, 2004 WL 1542216, *4 (N.D. Tex. 2004) (unpublished) ("[i]t is well-established that a difference in opinion or a disagreement between an inmate and prison officials as to what medical care is appropriate for his particular condition does not state a claim for deliberate indifference to medical needs.").

12.     Moreover, it is well established that "[s]imple medical malpractice . . . does not rise to the level of a constitutional violation." Waldrop, 871 F.2d at 1035. Thus, even if the Court were to assume that, at times, Plaintiff had been incorrectly treated by Defendants, of which there is no evidence, Eighth Amendment liability cannot be grounded on "mere negligence." Farrow, 320 F.3d at 1245. There is no evidence that Defendants refused to treat Plaintiff or that they engaged in "deliberately indifferent" delay in treating any of his alleged medical problems. Plaintiff has failed to meet the subjective element of "deliberate indifference" necessary to constitute an Eighth Amendment violation. Thus, Defendants are entitled to summary judgment on all of Plaintiff's improper medical care claims.

<u>Denial of Personal Safety</u>

13.     In <u>DeShaney v. Winnebago County Dep't of Soc. Servs.</u>, 489 U.S. 189

(1989), the Supreme Court summarized a state's constitutional responsibilities with

regard to inmates:

> [W]hen the State takes a person into its custody and holds him
> there against his will, the Constitution imposes upon it a
> corresponding duty to assume some responsibility for his
> safety and general well-being. . . .  The rationale for this
> principle is simple enough: when the State by the affirmative
> exercise of its power so restrains an individual's liberty that it
> renders him unable to care for himself, and at the same time
> fails to provide for his basic human needs -- *e.g.*, food,
> clothing, shelter, medical care, and reasonable safety -- it
> transgresses the substantive limits on state action set by the
> Eighth Amendment and the Due Process Clause.

<u>DeShaney</u>, 489 U.S. at 199-200 (citations omitted).  Regarding attacks by fellow inmates,

because the Eighth Amendment protects a prisoner from cruel and unusual punishments,

it imposes a duty on officials to protect an inmate from attack by another inmate;

however, not every injury inflicted by another inmate results from a violation of the

Constitution.  <u>Farmer v. Brennan</u>, 511 U.S. 825, 832-34, 114 S. Ct. 1970 (1994).

14.     In order to prevail on his Eighth Amendment claim brought under § 1983 in

this case regarding Plaintiff's personal safety, Plaintiff must prove three elements: "(1) a

condition of confinement that inflicted unnecessary pain or suffering, <u>Rhodes v.</u>

<u>Chapman</u>, 452 U.S. 337, 347, 101 S. Ct. 2392, 2399, 69 L. Ed. 2d 59 (1981), (2) the

defendant's 'deliberate indifference' to that condition, <u>Wilson v. Seiter</u>, 501 U.S. 294,

111 S. Ct. 2321, 2327, 115 L. Ed. 2d 271 (1991), and (3) causation, <u>Williams v. Bennett</u>,

689 F.2d 1370, 1389-90 (11th Cir. 1982)." <u>LaMarca v. Turner</u>, 995 F.2d 1526, 1535 (11th Cir. 1993). As noted above, an Eighth Amendment claim has an objective component, concerning "whether the alleged wrongdoing was objectively harmful enough to establish a constitutional violation," and a subjective component which requires that the Defendants acted with a "sufficiently culpable state of mind." <u>Sims</u>, 25 F.3d at 983.

15.     The objective component of an Eighth Amendment claim inquires whether the alleged wrongdoing amounted to the infliction of "unnecessary pain or suffering upon the prisoner." <u>See</u> <u>LaMarca</u>, 995 F.2d at 1535. This standard requires that the alleged deprivation be "objectively, 'sufficiently serious.'" <u>Farmer</u>, 511 U.S. at 834 (quoting <u>Wilson v. Seiter</u>, 501 U.S. 294, 298 (1991)). The objective standard "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency. . ., but must be balanced against competing penological goals." <u>LaMarca</u>, 995 F.2d at 1535 (quoting <u>Estelle v. Gamble</u>, 429 U.S. 97, 102 (1976) (internal quotation marks omitted)). In a situation where an inmate complains about being attacked by another inmate, the inmate must establish that the conditions under which he was incarcerated presented "a substantial risk of serious harm." <u>Farmer</u>, 511 U.S. at 834.

16.     The subjective component of an Eighth Amendment claim generally "inquires whether the officials acted with a sufficiently culpable state of mind." <u>Sims</u>, 25 F.3d at 983 (citing <u>Hudson v. McMillian</u>, 503 U.S. 1, 8 (1992)). This component "follows from the principle that 'only the unnecessary and wanton infliction of pain

implicates the Eighth Amendment.'" <u>Farmer</u>, 511 U.S. at 834 (quoting <u>Wilson</u>, 501 U.S. at 297). In prison condition cases, the required state of mind for a defendant is "deliberate indifference" to an inmate's health or safety. <u>Id.</u> (citations omitted). In defining "deliberate indifference," the court stated:

> We hold . . . that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

<u>Farmer</u>, 511 U.S. at 837. The court concluded that the "subjective recklessness" standard of criminal law is the test for "deliberate indifference" under the Eighth Amendment. <u>Id.</u> at 839-40. There is no liability for "an official's failure to alleviate a significant risk that he should have perceived but did not. . . ." <u>Farmer</u>, 511 U.S. at 838. It is not enough that a plaintiff proves that the defendant should have known of the risk, but did nothing, as actual subjective knowledge is the key. <u>See</u>, <u>e.g.</u>, <u>Cottrell v. Caldwell</u>, 85 F.3d 1480, 1491 (11th Cir. 1996). A prison official's duty under the Eighth Amendment is to ensure "reasonable safety," a standard that incorporates due regard for prison officials' "unenviable task of keeping dangerous men in safe custody under humane conditions." <u>Farmer</u>, 511 U.S. at 844-45. "Whether one puts it in terms of duty or deliberate indifference, prison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishments Clause." <u>Id.</u>

17.     Regarding Plaintiff's claim that he was attacked by other inmates, the Court finds instructive the Eleventh Circuit's decision in <u>Carter v. Galloway</u>, 352 F.3d 1346 (11th Cir. 2003).  In that case, the Court upheld an award of summary judgment in favor of defendant officers who plaintiff claimed failed to protect him from an attack by his cellmate.  <u>Id.</u>  The Eleventh Circuit concluded that plaintiff had failed to establish deliberate indifference on the part of defendants, despite their *awareness* that plaintiff, who had no history of prison violence, was locked in a cell with an inmate who was pending classification as a maximum security inmate, and who had exhibited violent tendencies while in prison.  <u>Id.</u>  Not only were defendants aware of the inmate's propensity for violence, but plaintiff actually advised defendant officers prior to the attack that the inmate had threatened plaintiff, and was acting "crazy," pacing in his cell like a "caged animal."  <u>Id.</u> at 1349.  The Court noted that "before Defendants' awareness arises to a sufficient level of culpability, there must be much more than mere awareness of [the inmate's] generally problematic nature."  <u>Id.</u>  Further, the Court explained that

> [e]ven assuming the existence of a serious risk of harm and legal causation, the prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists – and the prison official must also 'draw that inference.'

<u>Id.</u>  The Eleventh Circuit went on to explain that

> [d]efendants only possessed an awareness of [the inmate's] propensity for being a problematic inmate; to find Defendants sufficiently culpable would unduly reduce awareness to a more objective standard, rather than the required subjective

18

standard set by the Supreme Court.

Id. at 1350.  The Court noted that defendants "arguably should have placed Plaintiff elsewhere but 'merely negligent failure to protect an inmate from attack does not justify liability under section 1983...'"  Id., quoting Brown v. Hughes, 894 F.2d 1533, 1537 (11th Cir. 1990).  In the present case, Plaintiff has not even asserted that Defendants had knowledge of a possible attack by other inmates.

18.     Finally, Plaintiff must establish an affirmative causal connection between the Defendants' actions, orders, customs, policies, or breaches of statutory duty and a deprivation of Plaintiff's constitutional rights in order to state a claim upon which relief may be granted.  See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986).  A causal connection may be established by proving that the official was personally involved in the acts that resulted in the constitutional deprivation; by proving that a policy or custom that he established or utilized resulted in deliberate indifference to an inmate's constitutional rights; or by proving that a supervisory defendant breached a duty imposed by state or local law, and this breach caused Plaintiff's constitutional injury.  Id.

19.     Having set forth the general legal principles relevant to Plaintiff's claim, the Court now turns to the application of those legal principles to the facts before the Court.  First, with respect to the objective element of Plaintiff's Eighth Amendment claim, Plaintiff must show that the conditions under which he was incarcerated presented "a substantial risk of serious harm" to him.  Farmer, 511 U.S. at 834.  It is settled that

"confinement in a prison where violence and terror reign is actionable." <u>Purcell ex rel.</u>
<u>Estate of Morgan v. Toombs County, Ga.</u>, 400 F.3d 1313, 1320 (11th Cir. 2005) (citations omitted).  However, here,  Plaintiff has presented no evidence of other acts of inmate-on-inmate violence, whether from overcrowding, under staffing, or otherwise, nor has he produced evidence of any other conditions at the prison that exposed him to "the constant threat of violence." <u>Id.</u>  Further, Plaintiff has presented no evidence of any injury or actual hardship he endured as a result of the lack of handicapped accessible facilities at the WCJ.  Therefore, the Court finds Plaintiff's evidence insufficient for a jury to reasonably find that the conditions under which he was incarcerated presented "a substantial risk of serious harm." <u>Farmer</u>, 511 U.S. at 834.  Accordingly, Plaintiff has failed to satisfy the objective element of his Eighth Amendment claim.

20.	Second, in order to survive summary judgment, Plaintiff must put forth sufficient proof that Defendants were subjectively, deliberately indifferent to the risk of serious harm to him.  To meet this element, Plaintiff must prove that Defendants actually knew that a substantial risk of serious harm existed, and they "knowingly or recklessly" declined to take action to prevent that harm.  <u>LaMarca</u>, 995 F.2d at 1535.  "[A]n officials's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." <u>Farmer</u>, 511 U.S. at 838.  "'Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence.'" <u>Hale v. Tallapoosa County</u>, 50

F.3d 1579, 1583 (11th Cir. 1995) (quoting Farmer, 511 U.S. at 842). "Thus, 'a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" Id. (quoting Farmer, 511 U.S. at 842).

21.     Plaintiff has failed to even allege that Defendants knew of a danger to him from another inmate. There is absolutely no evidence of any knowledge of a threat to Plaintiff's safety, nor is there any evidence that Plaintiff actually suffered an injury by another inmate. There is no evidence of any knowledge by Defendants of a danger to Plaintiff as a result of the condition of the toilet and shower facilities at the WCJ, nor is there any evidence of an actual injury suffered by Plaintiff as a result of the WCJ facilities. Accordingly, the Court finds Plaintiff's allegations insufficient to establish the subjective element of his claims.[3]

22.     Having considered the evidence in this action in the light most favorable to Plaintiff, the Court finds that Plaintiff has failed to demonstrate any evidence of an actual injury, has failed to demonstrate any evidence of deliberate indifference by the Defendants, and thus to establish any constitutional violation by these Defendants.

## V. CONCLUSION

Based on the foregoing, it is recommended that the Motion for Summary Judgment of Defendants, William Wheat, Johnny Johnson, Allen Bailey, Jr., William Beasley,

_____

[3]As Plaintiff has clearly failed to offer any evidence of the objective and subjective components of a failure to protect claim, the Court need not address the issue of causation.

Hilton Robbins, Willie Dixon, and Doris Weaver, be granted and that Plaintiff's action

against these Defendants be dismissed with prejudice.

MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

1.      Objection.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the clerk of court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge.  See 28 U.S.C. § 636(b)(1)(C); Lewis v. Smith, 855 F.2d 736, 738 (11th Cir. 1988); Nettles v. Wainwright, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).  The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

> A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.      Transcript (applicable where proceedings tape recorded).  Pursuant to 28 U.S.C. § 1915 and Fed. R. Civ. P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial

determination that transcription is necessary is required before the United States will pay the cost of the transcript.

DONE this 10th day of July, 2007.

s/WILLIAM E. CASSADY
UNITED STATES MAGISTRATE JUDGE